**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **JAMES DUNKIN** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11-2022-JAR-KGG |
| | ) |
| **BNSF RAILWAY COMPANY**, and | ) |
| | ) |
| **JEFF KIRBY** | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

**COMES NOW** Plaintiff James Dunkin, appearing by and through counsel, and for his Complaint against Defendants BNSF Railway Company and Jeff Kirby states and alleges as follows:

### PARTIES

1. Plaintiff James Dunkin (hereinafter "Plaintiff") is an individual residing in the state of Kansas..

2. Defendant BNSF Railway Company (hereinafter "Defendant") is a corporation organized under the laws of Delaware.

3. Defendant Jeff Kirby (hereinafter "Kirby") is an individual residing in the state of Montana, who at all times material hereto was acting within the course and scope of his employment with the Defendant.

### JURISDICTION AND VENUE

4. Jurisdiction lies in this Court pursuant to 28 U.S.C. § 1331 an 42 U.S.C. § 2000e-5(f) in that Plaintiff's complaint presents a federal question arising from violations of Title VII of the Civil Rights Act of 1964.

1

5.  Jurisdiction lies in this Court pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship of the parties, and there is over $75,000 in controversy.

6.  The Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) in that they arise from the same case and controversy as Plaintiff's federal claims.

7.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3) in that a substantial part of the events giving rise to Plaintiff's claims occurred in this District, unlawful acts of employment discrimination occurred in this District, and, upon information and belief, the employment records relevant to the alleged unlawful employment practice are maintained in this District.

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8.  Defendant is engaged in an industry affecting interstate commerce.

9.  Defendant currently has more than fifteen employees, had more than fifteen employees for the entirety of the year 2010, and at all times when Defendant's unlawful acts occurred.

10. Plaintiff is currently employed by Defendant, and has been continuously employed by Defendant since 1996.

11. Starting in April of 2008, Plaintiff was employed as a general foreman in Glendive, Montana.

12. Plaintiff's immediate supervisor while he was working in Montana was Kirby.

13. Kirby frequently asked members of the staff, including the Plaintiff, to pray with him.

14. Kirby distributed religious materials to Plaintiff and other members of the staff, including a book called "Point Man," which contained detailed discussion of "sexual sin," instructions for raising "masculine sons and feminine daughters," and stated that it is sinful for a married couple not to have children.

15. In June of 2009, Kirby began to hold prayer meetings with members of management, and coerced the Plaintiff into attending.

16. Plaintiff told Kirby that he was uncomfortable with the meetings and did not wish to attend.

17. Kirby told the Plaintiff that he needed to attend the prayer meetings or find another position.

18. On one occasion, Kirby stood in his office with his door open and his pants down, and stared at Plaintiff in a suggestive manner.

19. Plaintiff complained about Kirby's conduct to Kirby's supervisor, who set up a meeting with Defendant's human resources department.

20. Soon after he complained about Kirby's conduct, Defendant retaliated against Plaintiff and transferred him to a "graveyard shift," which he had not worked prior to lodging his complaint.

21. Defendant's human resources department failed to take corrective action against Kirby, and told the Plaintiff that his only option was to transfer to another location.

22. All of the transfer options presented by the human resources department involved demotions, a cut in pay, and materially different job conditions.

23. Plaintiff was transferred to Kansas City, Kansas, in the position of assistant general foreman.

24. After his transfer, Plaintiff was reduced a pay grade and became ineligible to apply for certain promotions.

25. After his transfer, Plaintiff applied for several promotions for which he was qualified, but was denied the positions.

26. After his transfer, Plaintiff began to hear disparaging comments from his co-workers and subordinates about private medical information that had previously been disclosed to Defendant in connection with a request for leave.

27. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 15, 2010.

28. Plaintiff received a Notice of Right to Sue letter from the EEOC on October 19, 2010, a copy of which is attached hereto as Exhibit A, and incorporated herein by reference.

## COUNT 1: RELIGIOUS DISCRIMINATION

29. Plaintiff incorporates paragraphs 1-28 as if the same were set forth in their entirety.

30. Plaintiff suffered an adverse employment action in that he was demoted and became ineligible for certain promotions, and was not promoted to positions for which he was eligible.

31. At the time Plaintiff was demoted and denied further promotions, his job performance was satisfactory.

32. Plaintiff's demotion, ineligibility for promotions, and denial of further promotions are a direct and proximate result of his personal religious beliefs and his refusal to conform to Kirby's religious beliefs.

4

33. As a direct and proximate result of the demotion, Plaintiff suffered damages including, but not limited to lost wages, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

**WHEREFORE** Plaintiff prays for judgment against Defendant and Kirby in an amount in excess of $75,000, for back and front pay, for compensatory damages, for punitive damages sufficient to punish and deter Defendant and others from like conduct, for costs and attorney's fees, and for any further relief as may be just and proper under the circumstances.

## COUNT 2: RETALIATION

34. Plaintiff incorporates paragraphs 1-33 as if the same were set forth in their entirety.

35. Plaintiff had a good faith belief that Kirby engaged in religious discrimination.

36. Plaintiff engaged in protected opposition to religious discrimination by contacting Kirby's supervisor, lodging a complaint to the human resources department, and filing a complaint with the Equal Employment Opportunity Commission.

37. As a direct and proximate result of Plaintiff's protected opposition to religious discrimination, he suffered an adverse employment action in that he was demoted, became ineligible to apply for promotions, and was denied promotions for which he was eligible.

38. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff suffered damages including, but not limited to lost wages, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

39. Defendant's retaliatory actions were willful, wanton, and in reckless disregard of Plaintiff's rights.

**WHEREFORE** Plaintiff prays for judgment against Defendant and Kirby in an amount in excess of $75,000, for back and front pay, for compensatory damages, for punitive damages sufficient to punish and deter Defendant and others from like conduct, for costs and attorney's fees, and for any further relief as may be just and proper under the circumstances.

## COUNT 3: HOSTILE WORK ENVIRONMENT

40. Plaintiff incorporates paragraphs 1-39 as if the same were set forth in their entirety.

41. Plaintiff is a member of a protected class in that he has a sincere Christian belief that conflicts with Kirby's interpretation of Christianity.

42. Plaintiff suffered intentional discrimination because of his religious beliefs, in that Kirby discriminated against and harassed him for refusing to share Kirby's religious beliefs and attend compulsory prayer services.

43. Plaintiff was harassed due to his religious beliefs, in that he was subjected to regular, unwelcome prosthelytizing by Kirby and was required to attend prayer meetings.

44. The aforementioned harassment was pervasive, regular, and severe, and interfered with Plaintiff's job performance.

45. The aforementioned harassment affected the conditions of Plaintiff's employment, and ultimately resulted in the Plaintiff's demotion, ineligibility for promotions, lack of advancement and cut in pay.

6

46. The discrimination detrimentally affected the Plaintiff.

47. The discrimination would detrimentally affect a person of the Plaintiff's same religion in his position.

48. Defendant knew or should have known of the harassment perpetrated by Kirby, but failed to take proper action to correct the harassment.

**WHEREFORE** Plaintiff prays for judgment against Defendant and Kirby in an amount in excess of $75,000, for back and front pay, for compensatory damages, for punitive damages sufficient to punish and deter Defendant and others from like conduct, for costs and attorney's fees, and for any further relief as may be just and proper under the circumstances.

### COUNT 4: UNAUTHORIZED DISCLOSURE OF MEDICAL INFORMATION

49. Plaintiff incorporates paragraphs 1-48 as if the same were set forth in their entirety.

50. Plaintiff disclosed private, personal health information to Defendant in connection with a request for medical leave.

51. Upon information and belief, Defendant disclosed this information to Plaintiff's co-workers and subordinates.

52. The disclosures to Plaintiff's co-workers and subordinates were without Plaintiff's consent.

53. The disclosures to Plaintiff's co-workers and subordinates served no legitimate, employment-related purpose, and/or were broader than what was necessary to achieve any legitimate, employment-related purpose.

54. The disclosure of Plaintiff's information violated 5 C.F.R. 825.500(g) and 29 C.F.R. 1630.14(c)(1).

55. As a direct and proximate result of Defendant's disclosure of personal information, Plaintiff suffered tangible harm, including harassment by co-workers, mental anguish and suffering.

**WHEREFORE** Plaintiff prays for judgment against Defendant in an amount in excess of $75,000, for compensatory damages, for costs, and for any further relief as may be just and proper under the circumstances.

## COUNT 5: INVASION OF PRIVACY

56. Plaintiff incorporates paragraphs 1-55 as if the same were set forth in their entirety.

57. Plaintiff disclosed private, personal health information to Defendant in connection with a request for medical leave.

58. Upon information and belief, Defendant and its agents disclosed this information to co-workers and subordinates of the Plaintiff while he was working in Kansas City, Kansas.

59. The disclosure of the personal health information would be highly offensive to a reasonable person.

60. The personal health information disclosed was not of legitimate concern to the public, or the Plaintiff's co-workers and subordinates.

61. Defendant's disclosure of personal health information was willful, wanton, and in reckless disregard of the Plaintiff's rights.

62. As a direct and proximate result of the disclosure of personal health information, Plaintiff suffered damages including, but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

**WHEREFORE** Plaintiff prays for judgment against Defendant in an amount in excess of $75,000, for compensatory damages, for punitive damages sufficient to punish and deter Defendant and others from like conduct, for costs and attorney's fees, and for any further relief as may be just and proper under the circumstances.

### COUNT 6: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

63. Plaintiff incorporates paragraphs 1-62 as if the same were set forth in their entirety.

64. Plaintiff disclosed private, personal health information to Defendant in connection with a request for medical leave.

65. Upon information and belief, Defendant and its agents disclosed this information to co-workers and subordinates of the Plaintiff while he was working in Kansas City, Kansas.

66. Defendant posted a public notice that Plaintiff's previous job in Glendive, Montana was available, after assuring Plaintiff that the position had been eliminated after his departure.

67. Defendant publicly listed the Plaintiff as an assistant general foreman, after assuring the Plaintiff that it would not do so.

68. Defendant's conduct in disclosing health information and posting information concerning Plaintiff's demotion was extreme and outrageous.

69. Defendant's conduct in disclosing this information was willful, wanton, and in reckless disregard of the Plaintiff's rights.

70. As a direct and proximate result of Defendant's conduct described herein, Plaintiff suffered damages including, but not limited to medically significant emotional distress, suffering, and loss of enjoyment of life.

**WHEREFORE** Plaintiff prays for judgment against Defendant in an amount in excess of $75,000, for compensatory damages, for punitive damages sufficient to punish and deter Defendant and others from like conduct, for costs and attorney's fees, and for any further relief as may be just and proper under the circumstances.

## COUNT 7: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

71. Plaintiff incorporates paragraphs 1-70 as if the same were set forth in their entirety.

72. Defendant had a duty to exercise reasonable care in the maintenance of Plaintiff's personal health information.

73. Defendant breached its duty to exercise reasonable care in the maintenance of Plaintiff's personal health information, in that it allowed this information to be disclosed to Plaintiff's subordinates and co-workers.

74. Defendant's conduct in allowing personal health information to be disclosed was wanton and in reckless disregard of the Plaintiff's rights.

75. As a direct and proximate result of Defendant's conduct described herein, Plaintiff suffered damages including, but not limited to medically significant emotional distress, suffering, and loss of enjoyment of life.

**WHEREFORE** Plaintiff prays for judgment against Defendant in an amount in

excess of $75,000, for compensatory damages, for punitive damages sufficient to punish and deter Defendant and others from like conduct, for costs and attorney's fees, and for any further relief as may be just and proper under the circumstances.

## JURY DEMAND

Plaintiff hereby requests a jury trial for all of his claims.

> Respectfully Submitted,
>
> CASTLE LAW OFFICE of KANSAS CITY, P.C.
>
> */s/ Andrew C. Schendel*_____
> Andrew Schendel, KS #24045
> 818 Grand Blvd, Suite 700
> Kansas City, Missouri 64106
> (816) 283-0303 phone
> (816) 842-0016 facsimile
> aschendel@castlelaw-kc.com
> ATTORNEY FOR PLAINTIFF